UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

CASEY PHILLIP,

                Plaintiff,

        -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, DAYSI GARCIA,
Principal of P65K, MARTHA RODRIGUEZ-TORRES,
Local Instructional Superintendent,

                Defendants.

------------------------------------------------------------------------x

Docket No.:  09-CV-442
              (CPS) (JO)


**AMENDED COMPLAINT**


**DEMAND FOR JURY
TRIAL**

Plaintiff CASEY PHILLIP, by his attorneys, Ofodile & Associates, P.C., complaining of

Defendants THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF

EDUCATION, and DAYSI GARCIA (Principal of P65K), and MARTHA RODRIGUEZ-

TORRES (Local Instructional Superintendent), acting in their individual and official capacities.

### NATURE OF ACTION

1.    This action is brought by Plaintiff, pursuant to Title VII of the Civil Rights Act  of

1964, as amended, 42 U.S.C. Sec. 2000e, et seq. (hereinafter also referred to as "Title VII"), the

Civil Rights Act of 1866, as amended, 42 U.S.C. Section 1981 (hereinafter also referred to as

"Sec. 1981"), the Fourteenth Amendment to the U.S. Constitution, the New York State

Executive Law Sec. 296 (hereinafter also referred to as the "New York State Human Rights

Law") and the Administrative Code of the City of New York, Sec. 8, et seq. (hereinafter also

referred to as the "New York City Human Rights Law"), to redress Defendants' discrimination

against Plaintiff on the basis of his race, color and national origin and Defendants' retaliation against Plaintiff for complaining about discrimination.

2.      Plaintiff seeks injunctive and declaratory relief, compensatory and other legal and equitable relief pursuant to Title VII, § 1981, the New York State Human Rights Law, and the New York City Human Rights Law.

## JURISDICTION AND VENUE

3.      Jurisdiction is specifically conferred on the United States District Court by the aforementioned statutes as well as by 28 U.S.C. Secs. 1331 and 1343.  The Court has supplemental jurisdiction over Plaintiff's claims based on the New York State Executive Law Sec. 296 (New York State Human Rights Law) and the New York City Administrative Code, § 8, et seq. (New York City Human Rights Law).

4.      The events, parties, transactions and injuries that form the basis of Plaintiff's federal claims are identical to the events, parties, transactions and injuries that form the basis of Plaintiff's claims brought under the New York State Human Rights Law and the New York City Human Rights Law.

5.      The unlawful employment practices alleged in this complaint were committed in the Eastern District of New York and venue is proper in this District pursuant to 28 U.S.C. Secs. 1391 (b) and (c).

## PARTIES

6.     At all times relevant and material to this case, Plaintiff Casey Phillip was employed by the City of New York and/or the New York City Department of Education as a public school teacher at P65K, located at 158 Richmond Street, Brooklyn, NY 11208.

7.     At all times relevant and material to this case, Defendant City of New York was a municipal corporation organized under the laws of the State of New York and the City of New York.  At all times relevant and material to this case, Defendant City of New York was an employer under Title VII, § 1981, the New York State Human Rights Law, and the New York City Human Rights Law.

8.     At all times relevant and material to this case, Defendant New York City Department of Education was a corporation organized under the laws of the State of New York and the City of New York.  At all times relevant and material to this case, Defendant New York City Department of Education was an employer under Title VII, § 1981, the New York State Human Rights Law, and the New York City Human Rights Law.

9.     At all times relevant and material to this case, Defendant Daysi Garcia was employed by Defendant City of New York and/or Defendant New York City Department of Education as the Principal of P65K.

10.     At all times relevant and material to this case, Defendant Martha Rodriguez-Torres was employed by Defendant City of New York and/or Defendant New York City Department of Education as a Local Instructional Superintendent.

11.     At all times relevant and material to this case, Defendants City of New York and/or New York City Department of Education were responsible for the actions of Defendants

3

Daysi Garcia and Martha Rodriguez-Torres under the common law principal agent / *respondeat superior* rule.

## FULFILLMENT OF ADMINISTRATIVE PROCEDURES

12.     Plaintiff Casey Phillip has satisfied all administrative and judicial prerequisites to the institution of this action.

13.     Plaintiff timely filed a charge of discrimination against the New York City Department of Education and the City of New York with the Equal Employment Opportunity Commission (EEOC) within three hundred days of some of the acts of retaliation and discrimination complained of herein in accordance with the requirements of the Civil Rights Act of 1964, as amended.

14.     Plaintiff received a "Notice of Right to Sue" (annexed hereto) dated on or about December 18, 2008 and received thereafter, and this action is filed within ninety days of the receipt of the Notice of Right to Sue.  Prior to the commencement of this action, the EEOC has not filed any action nor has it entered into any conciliation agreement regarding the allegations in this complaint.

15.     Before the institution of this action, Plaintiff served a copy of this Complaint on the City Corporation Counsel's Office as well as on the New York City Commission on Human Rights on or about February 3, 2009, in accordance with the requirements of the New York City Administrative Code Sec. 8-502(c).

4

## FACTUAL ALLEGATIONS

16.     Plaintiff Casey Phillip is a Black male.  Plaintiff began his employment as a New York City public school teacher on or about January 13, 2003.  He was employed as a public school teacher at P.S. 65K from 2003 to 2007.  In 2004, Defendant Daysi Garcia became the Principal of P65K.  Over the next several years, Defendant Daysi Garcia subjected Plaintiff to adverse employment actions and a hostile work environment on account of his race, color, and ethnicity and in retaliation for his complaints of discrimination.  Many of the incidents that comprise the discriminatory and retaliatory hostile work environment and adverse employment actions are recounted below.

17.     In or about November 2004, Defendant Garcia came to Plaintiff's fourth grade class to observe him teach a Balanced Literacy lesson.  She positioned her chair so that she had her back turned to Plaintiff during the entire observation.  She said that she wanted to see the expressions on the students' faces, not their teacher's face.  Her conduct was an aberration. Plaintiff had been teaching for 10-plus years at that point and during the many observations that he had received, the administrator conducting the observation had always positioned himself/herself in a way that he/she could see both the teacher and the students.  After the observation, Plaintiff – who was the only Black teacher and only individual from the Caribbean teaching fourth grade at that time – asked a couple of his non-Black, non-Caribbean colleagues teaching the fourth grade if they had had the same experience with Defendant Garcia and they told him that they had not.

18.    In the Fall of 2004, Defendant Garcia also did not follow protocol in handling a student/parent complaint against Plaintiff, whereas she did follow protocol in handling complaints about his non-Black, non-Caribbean colleagues.  Defendant Garcia told Plaintiff after the fact, while Plaintiff was picking up his mail in the main office, that the mother of a student had just made a complaint about Plaintiff to her.  Garcia said that the mother had told her that the student had reported that Plaintiff had told the class never to inform or tell their parents, the principal, or assistant principal of any incident that transpires in the classroom. Garcia also told Plaintiff that the parent was on her way to the Chancellor's Office to make the same complaint. Defendant Garcia had not called Plaintiff into the office to respond to this very serious allegation while the parent was there and Plaintiff only found out about this allegation soon after it was made by happenstance.

19.    Plaintiff caught up with the parent, told her that he never made any such comment to his students, and suggested that they meet with her daughter and the principal.  The parent agreed.  During the meeting, the student admitted that Plaintiff had never made this comment to the class and that she didn't know why she had claimed that Plaintiff had.  If Plaintiff had not happened to go to the office to retrieve his mail right after the parent left and if he had not caught up with the parent, the parent would have gone to the Chancellor's office with false information and his job would have been in jeopardy.  Defendant Garcia put him at great risk by not calling him into respond to the parent's allegations.

20.    On June 28, 2005, the last day of the 2004-2005 school year, Plaintiff went to Ms. Garcia's office to turn in his classroom key and collect his pay stubs.  In the presence of Regina

Grander (then Math Coach), Defendant Garcia made the following racist comment to Plaintiff,

"When you return in September, I'll be a slave driver."

21.     In October/November 2005, Defendant Garcia treated Plaintiff and another Black,

Caribbean teacher, Lucienne Mohammed, differently from their Hispanic colleagues by giving

Plaintiff and Mohammed only a weekend's notice to prepare a lesson plan for a pre-observation

meeting that was going to lead to an actual class observation a couple of days later, while giving

their Hispanic colleagues approximately two weeks notice.  Garcia also gave Plaintiff and

Mohammed a 10-page document to adhere to for the observation while not giving this document

to their Hispanic counterparts.

22.     Garcia also treated Plaintiff differently than his White and Hispanic counterparts

with respect to internships.  Plaintiff, Regina Granduer (a White female), Wendy Glash (a White

female), and Vanessa Rosa (a Hispanic female) were all studying to be school administrators,

which required among other things doing an internship under the supervision of a "mentor".   In

or about March 2006, Plaintiff and these other teachers arranged with Defendant Garcia to

perform their internships under her mentorship at P.S. 65K on top of their teaching duties.

Although Ms. Garcia initially agreed to allow Plaintiff to do the internship at P.S. 65K under her

mentorship, she soon tried to rescind her agreement with him, while not trying to rescind the

agreement with the White and Hispanic teachers.  After Michelle Brauer (the United Federation

of Teachers Chapter leader at P.S. 65K) told Ms. Garcia that Plaintiff could sue her for

discrimination based on her actions and after Ms. Garcia's mentor, Joyce Mitchell, spoke with

her, Defendant Garcia reluctantly agreed to allow Plaintiff to carry on the internship.  However,

she tried to prevent Plaintiff from fulfilling the requirements for the internship, while not

7

sabotaging his White and Hispanic counterparts.  The college where Plaintiff was studying to be an administrator gave Plaintiff a document outlining several skills – known as "competencies" – that he was required to work on during his internship.   Plaintiff, in turn, gave this document to Defendant Garcia.  Under the pretext of giving Plaintiff duties to fulfill his internship, Ms. Garcia gave Plaintiff duties that had nothing to do with the requirements of his internship and that were actually the duties of an aide, not a teacher or an administrator.  These included breakfast duty, yard duty, lunch duty, and bus duty.  On the other hand, Ms. Garcia gave Granduer, Glash, and Rosa duties that allowed them to actually meet the requirements of their internships, such as tasks that brought them in direct contact with their colleagues.

23.     Plaintiff had to try to find a way to obtain duties to meet the competencies. Because Ms. Garcia essentially refused to mentor Plaintiff in the duties that he needed to fulfill his competencies, he found a mentor in Assistant Principal Yvette Mendez.  He gave Ms. Mendez the internship papers to complete as she was actually the person who had been mentoring him.  Ms. Garcia prohibited Ms. Mendez from rating Plaintiff, insisted on doing it herself, and gave Plaintiff the lowest or almost lowest possible rating.  She did not give low ratings to his White and Hispanic counterparts.  Ms. Garcia had actually expressed to Plaintiff that she was not looking forward to working with Plaintiff as an administrator.

24.     In addition, on or about March 2, 2006 and several times thereafter, Defendant Garcia beckoned Plaintiff with a demeaning hand gesture rather than calling Plaintiff by his name.  She even did this to Plaintiff in front of Plaintiff's students.  Upon Plaintiff's information and belief, Defendant Garcia did not do this to any of his non-Black, non-Caribbean colleagues.

25.     In addition for the school year of 2006-2007, Defendant Garcia assigned a class of 25 at-risk students (students with behavior and learning problems) and failed and refused to assign him an assistant.  James Caulfield, a White male teacher, had had a substantially smaller class made up of about 14-16 of the students that Plaintiff had and was assigned an assistant for two full days per week.  Plaintiff, Assistant Principal Ms. Mendez, and United Federation of Teachers (UFT) Chapter Leader Jonathan Horton requested this assistant for Plaintiff from Garcia (Plaintiff doing so repeatedly), and Defendant Garcia repeatedly denied Plaintiff an assistant.  Assistant Principal Ms. Mendez also asked Ms. Garcia to separate Plaintiff's most problematic students.  Ms. Garcia responded to Ms. Mendez with, "Let him [ie. Casey Phillip] handle it."  These students had been actually removed from Mr. Caulfield's class because of behavioral problems.

26.     In or about October 2006, Defendant Garcia also fabricated charges against Plaintiff.  Defendant Garcia falsely alleged to Plaintiff's UFT representative, Alan Weinstein, that almost a week prior, Plaintiff had left students unsupervised after 3:00 p.m.  Garcia had not mentioned the allegation to Plaintiff in the intervening period of almost a week, could not name the students whom Plaintiff allegedly left unsupervised, and knew that Plaintiff finished his workday at 3:00 p.m. and therefore could not have left students unsupervised after 3:00 p.m.  Plaintiff had never left his classroom until the after-school teacher came and relieved him.  Defendant Garcia was trying to sabotage Plaintiff's career and did not try to reprimand non-Black, non-Caribbean teachers who had actually left their students unsupervised.  Plaintiff was informed of a conversation in which Defendant Garcia was overheard saying that she was going to "fix Mr. Phillip."

27.     On November 7, 2006 (Election Day), public schools were closed and Defendant Garcia held her annual Staff Development Day.  On this day, the literacy coach, Ilene Brodsky, led a professional development session modeling a read-aloud.  The book that Ms. Brodsky used was the "The Cays."  Ms. Brodsky asked Plaintiff to read the part of a "Negro" in a very insensitive, demeaning, and humiliating reading.  She told him that she was asking him to read it because he had the "right accent."  The "Negro" was portrayed in the book in a very offensive way, as conveyed in the following description, which Ms. Brodsky read herself:  "I saw a huge, very old Negro sitting on the raft near me.  He was ugly.  His nose was flat and his face was broad; his head was a mass of wiry gray hair.  For a moment, I could not figure out where I was or who he was…"  Ms. Brodsky asked Plaintiff to read the following statements by the Negro:  "You 'ad a moss terrible crack on d'ead, bahss.  A strong-black glanc ofen your 'end, an' I harly about aboard dis raff."  Plaintiff did not read the passage as he was asked to do and was very embarrassed and humiliated.

28.     Defendant Ms. Garcia must have approved and condoned the use of the book of "The Cays" and the way that Ms. Brodsky conducted the workshop, for it was practice for principals to:  meet with their support team/coaches to plan and discuss the strategies and materials to be used in the professional development; and have the final say on what strategies and materials were ultimately used.  Furthermore, Defendant Daysi Garcia personally checked in on the professional development session several times.  She sat in the back smiling while Ms. Brodsky asked Plaintiff to read the passage and Plaintiff was later informed by one of his colleagues that Ms. Garcia laughed at Plaintiff being asked to mimic the "Negro."

29.     Plaintiff was also the only teacher required to read with his class a book entitled, "Roll of Thunder, Hear My Cry" which used the word "nigger" repeatedly.

30.     For the 2006-2007 school year, Defendant Ms. Garcia also implemented a segregation policy.  Ms. Garcia manipulated the schedule so that Plaintiff and the only other Black and Caribbean teacher teaching fifth grade were scheduled to have lunch during a separate time period from their two colleagues, one of whom was Hispanic and the other of whom was Guyanese/Indian.  The teachers in the third grade (all of whom were Hispanic or White) had lunch together, as well as the teachers in the fourth grade (all of whom were Hispanic and White).  Defendant Ms. Garcia's pretextual explanation for this segregation policy was that the lunchroom could not accommodate all of the fifth grade classes in a single lunch period.  However, there were only four fifth grade classes, while there were five third grade classes and five fourth grade classes and all of the third grade classes had lunch together and all of the fourth grade classes had lunch together.  In addition, the year before Garcia implemented this segregation policy, there were five fifth grade classes and all five were scheduled for lunch during the same period.

31.     Furthermore, on December 22, 2006, the staff had a luncheon in the school library.  Of the four fifth grade teachers – Plaintiff, Ms. Mohammed (who is Black), Rosa Ruiz (who is Hispanic), and Samnanth Narine (who is a dark-skinned Guyanese/Indian) – Defendant Garcia only informed Ms. Ruiz, the Hispanic teacher about the luncheon.  All of the dark-skinned teachers in the fifth grade were excluded.

32.     Defendant Garcia also discriminated against and embarrassed Plaintiff in the following ways.  While Plaintiff was performing the line-up duty and leading the students in the singing of the national anthem, Plaintiff was a little off-key.  Defendant Garcia, in the presence of the five fifth grade classes, five fourth grade classes, teachers, schools aides, and several parents, proceeded to insert her index finger into her open mouth.  As far as Plaintiff is aware,

Ms. Garcia never engaged in such an act of unprofessionalism while non-Black, non-Caribbean teachers were leading the national anthem, including but not limited to Mr. Gagliano, who was also sometimes off-key.

33.     In addition, the following incident happened at a cultural day for the fifth grade classes that Plaintiff had worked to coordinate.  Plaintiff's class was the fifth or sixth act in the program.  When his class got up to perform, Defendant Garcia, Regina Granduer, Wendy Glash, Ilene Brodsky, and Vanessa Rosa all got up and walked out.  This was the only performance for which they did not stay.  They returned right after Plaintiff's class had performed.  Plaintiff's students, who had worked extremely hard for this event, asked why the principal had not stayed around for their performance.  Their feelings were obviously hurt.

34.     On or about December 14, 2006, Plaintiff requested copies of documents from his personnel file.  On December 22, 2006, the UFT Chapter Leader, Jonathan Horton, informed Plaintiff that some of the documents that he had requested had been shredded by Ms. Garcia.  These shredded documents included Plaintiff's internship documents and letters of recommendation and commendation.  The destruction of these documents jeopardized Plaintiff's chances of becoming a principal.  Plaintiff is not aware of any other teacher whose documents Ms. Garcia destroyed.

35.     Defendant Garcia also used derogatory terms to refer to Plaintiff.

36.     On or about December 26, 2006, Plaintiff filed a complaint with the Office of Equal Opportunity in the New York City Department of Education, complaining that Defendant Daysi Garcia was discriminating against him on the basis of his color, race, and national origin.  On or about January 4, 2007, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against the New York City Department of Education and

12

the City of New York, asserting race, color, and national origin discrimination. Plaintiff re-filed this complaint with the EEOC in late January/early February 2007 after the EEOC claimed it had no record of him filing with them or visiting their office on 1/4/07. The EEOC received the secondly filed complaint on or about 2/7/07. Defendant Garcia was informed of and responded to these complaints.

37.     Soon after Plaintiff filed these complaints and/or while they were being prosecuted, Defendant Garcia and other administrators subjected Plaintiff to further discriminatory and retaliatory acts. They barraged Plaintiff with unjustified write-ups and negative evaluations, which eventually led to Plaintiff's removal from the school in June 2007.

38.     For example, on or about January 2, 2007, Defendant Ms. Garcia directed Yvette Mendez to place a letter in Plaintiff's official file for not adhering to a pacing calendar for a test preparation guide, while not writing up White and Hispanic teachers who were also not in compliance with the pacing calendar. In addition, on or about January 2, 2007, Defendant Local Instructional Superintendent Martha Rodriguez-Torres began visiting Plaintiff's classroom. The Local Insructional Superintendent had never visited Plaintiff's classroom before and Plaintiff was not aware of any other teacher whose classroom was visited by the Local Instructional Superintendent. In addition to visiting Plaintiff's classroom on January 2, 2007, Ms. Torres visited Plaintiff's classroom on April 17, 2007 and during that visit gave Plaintiff an evaluation that grossly misrepresented what she had observed, as well as "u" rating.

39.     On or about March 16, 2007, Defendant Garcia gave Plaintiff a counseling letter for allegedly not walking his students directly to the gate at dismissal. Plaintiff did in fact walk his students to the gate and Defendant Garcia did nothing to reprimand a Hispanic teacher, a

White teacher, and an Asian teacher who actually allowed their students to run wildly and unsupervised from the door to the gate.

40.     On or about March 19, 2007, Defendant Garcia pretended to observe Plaintiff's teaching even though he had met the required number of observations for the year (with all satisfactory ratings). Defendant Garcia had denied Plaintiff's request to have a third person present for the "observation." Garcia gave Plaintiff his first-ever "unsatisfactory" rating, even though he had satisfactorily met all of his teacher observations. In an effort to make it seem that this "unsatisfactory" rating was not Plaintiff's first "u" rating, the Department of Education staff attorney Katherine G. Rodi authored a document that claimed that Plaintiff had been "u" rated at P721Q while Plaintiff was a teacher there. However, Plaintiff had never even taught at P721Q and never received a "u" rating before.

41.     In the letters that Ms. Garcia put in Plaintiff's file, she often described Plaintiff as "loud", which was a characterization she often made of Black males.

42.     On or about April 17, 2007, Defendant Daysi Garcia further retaliated and discriminated against Plaintiff by unjustifiably referring him for a psychiatric evaluation and making grossly false statements about his behavior and character. In her recommendation of Plaintiff for evaluation, she specifically stated that among Plaintiff's troubling behaviors was his "false accusations of discriminatory, prejudice and racist remarks and/or actions."

43.     On or about April 18, 2007, Plaintiff filed another complaint with the Department of Education's Office of Equal Opportunity. In this complaint, he complained that Defendant Garcia was retaliating against him for the aforementioned discrimination complaints. Plaintiff also filed a union grievance against Garcia, alleging, among other things, that Plaintiff was

subjecting him to discriminatory behavior and harassment based on his race, color, and national origin.

44.     After Plaintiff filed these additional complaints, Defendant Garcia began using Assistant Principal Jaggon, who is Black, as a conduit through which to discipline Plaintiff.  AP Jaggon placed several letters in Plaintiff's file.

45.     On or about June 8, 2007, Plaintiff made a further complaint of discrimination when he and several other teachers met with Defendant Local Instructional Superintendent Martha Rodriguez-Torres and Regional Superintendent Dr. Kathleen Cashin to complain about Defendant Garcia's discriminatory treatment of them.  On or about June 12, 2007, Plaintiff and the other teachers wrote a follow-up letter to Dr. Cashin.  Later on in June 2007, within days of the complaint to Torres and Cashin and while the OEO and EEOC complaints were still pending, Plaintiff was removed from teaching at P.S. 65K and was brought up on 3020A charges.  During the 3020A hearing, the DOE used as evidence against Plaintiff the fictitious document from the DOE claiming that Plaintiff had taught at P721Q and had received a "u" rating there, as well as the false write-up by Martha Rodrigues-Torres.  Plaintiff was assigned to sit in a "rubber room" for more than year.

46.     In October 2008, Defendants subjected Plaintiff to further discrimination and retaliation when they informed him that his H-1 B visa had been revoked, that he had been removed from the payroll, and that he had been terminated and should not return to the reassignment center.  Plaintiff never received any papers stating that he had been officially terminated.

47.     Defendant Garcia's discrimination against Plaintiff on the basis of race, national origin, and color occurred against a background of Defendant Garcia discriminating against

15

individuals of color.  Between 2004 and 2007, Defendant Garcia removed, did not rehire, caused the removal, or caused not be rehired ten staff members of color.  In addition, between 2004 and 2007, Ms. Garcia forced two staff members of color to have psychiatric evaluations.  In addition, as of September 2008, four teachers from P65K had filed some form of race-based discrimination charges against Ms. Garcia and there was only one Black classroom teacher at P.S. 65K.  In addition, although the DOE has placed several Black Assistant Principals at P65K during Ms. Garcia's tenure there, she has forced them out.  For example, in December 2004, Ms. Garcia caused Assistant Principal Belinda Bell Farmer to be demoted back to a math coach position after Farmer had only been AP for about three months.  In addition, Assistant Principal Diedre Lacey resigned in June 2005 after only four months as AP, and upon information and belief, she resigned under threat that if she didn't, Ms. Garcia would cause her to be demoted. Furthermore, in September 2005, Leatrice Johnson was hired as an AP and Ms. Garcia immediately assigned her to the annex, which was two miles away from the main building.

48.     In addition, White and Hispanic teachers who associated with Plaintiff and/or other Black teachers were blackballed or retaliated against by Defendant Garcia who had told them not to associate with Plaintiff and other Black teachers.  For example, Defendant Garcia caused a Hispanic teacher named Yessenia Francisco to lose her license after Ms. Francisco refused Ms. Garcia's request that she stop associating with Plaintiff and other Black teachers.

49.     Plaintiff has suffered immense emotional, mental, and physical distress as a result of Defendants' actions.

**<u>AS FOR A FIRST CAUSE OF ACTION</u>**

50.     Plaintiff repeats and realleges paragraphs 1 through 49 of this Complaint as if each paragraph is repeated verbatim herein.

51.      In violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Sec. 2000e, et seq., Defendants City of New York and New York City Department of Education subjected Plaintiff to materially adverse actions and adverse employment actions on the basis of his race.

**<u>AND AS FOR A SECOND CAUSE OF ACTION</u>**

52.     Plaintiff repeats and realleges paragraphs 1 through 51 of this Complaint as if each paragraph is repeated verbatim herein.

53.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Sec. 2000e, et seq., Defendants City of New York and New York City Department of Education subjected Plaintiff to materially adverse actions and adverse employment actions on the basis of his color.

**<u>AND AS FOR A THIRD CAUSE OF ACTION</u>**

54.     Plaintiff repeats and realleges paragraphs 1 through 53 of this Complaint as if each paragraph is repeated verbatim herein.

55.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Sec. 2000e, et seq., Defendants City of New York and New York City Department of Education subjected Plaintiff to materially adverse actions and adverse employment actions on the basis of his national origin.

## AND AS FOR A FOURTH CAUSE OF ACTION

56.     Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint as if each paragraph is repeated verbatim herein.

57.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Sec. 2000e, et seq., Defendants City of New York and New York City Department of Education subjected Plaintiff to a hostile work environment on the basis of his race.

## AND AS FOR A FIFTH CAUSE OF ACTION

58.     Plaintiff repeats and realleges paragraphs 1 through 57 of this Complaint as if each paragraph is repeated verbatim herein.

59.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Sec. 2000e, et seq., Defendants City of New York and New York City Department of Education subjected Plaintiff to a hostile work environment on the basis of his color.

## AND AS FOR A SIXTH CAUSE OF ACTION

60.     Plaintiff repeats and realleges paragraphs 1 through 59 of this Complaint as if each paragraph is repeated verbatim herein.

61.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42

18

U.S.C. Sec. 2000e, et seq., Defendants City of New York and New York City Department of Education subjected Plaintiff to a hostile work environment on the basis of his national origin.

## AND AS FOR A SEVENTH CAUSE OF ACTION

62.     Plaintiff repeats and realleges paragraphs 1 through 61 of this Complaint as if each paragraph is repeated verbatim herein.

63.     In violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Sec. 2000e, et seq., Defendants City of New York and New York City Department of Education retaliated against Plaintiff for complaining about race, color, and/or national origin discrimination.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

64.     Plaintiff repeats and realleges paragraphs 1 through 63 of this Complaint as if each paragraph is repeated verbatim herein.

65.     In violation of 42 U.S.C. Section 1981 and the Fourteenth Amendment to the U.S. Constitution, Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his race.

## AND AS FOR A NINTH CAUSE OF ACTION

66.     Plaintiff repeats and realleges paragraphs 1 through 65 of this Complaint as if each paragraph is repeated verbatim herein.

67.     In violation of 42 U.S.C. Section 1981 and the Fourteenth Amendment to the U.S.

Constitution, Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his color.

## AND AS FOR A TENTH CAUSE OF ACTION

67.     Plaintiff repeats and realleges paragraphs 1 through 66 of this Complaint as if each paragraph is repeated verbatim herein.

68.     In violation of 42 U.S.C. Section 1981 and the Fourteenth Amendment to the U.S. Constitution, Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on the basis of his race.

## AND AS FOR AN ELEVENTH CAUSE OF ACTION

69.     Plaintiff repeats and realleges paragraphs 1 through 68 of this Complaint as if each paragraph is repeated verbatim herein.

70.     In violation of 42 U.S.C. Section 1981 and the Fourteenth Amendment to the U.S. Constitution, Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on the basis of his color.

## AND AS FOR A TWELFTH CAUSE OF ACTION

71.     Plaintiff repeats and realleges paragraphs 1 through 70 of this Complaint as if each paragraph is repeated verbatim herein.

72.     In violation of 42 U.S.C. Section 1981 and the Fourteenth Amendment to the U.S. Constitution, Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres retaliated against Plaintiff for complaining about race discrimination.

## AND AS FOR A THIRTEENTH CAUSE OF ACTION

73.     Plaintiff repeats and realleges paragraphs 1 through 72 of this Complaint as if each paragraph is repeated verbatim herein.

74.     In violation of the New York State Executive Law, Sec. 296 (New York State Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his race.

## AND AS FOR A FOURTEENTH CAUSE OF ACTION

75.     Plaintiff repeats and realleges paragraphs 1 through 74 of this Complaint as if each paragraph is repeated verbatim herein.

76.     In violation of the New York State Executive Law, Sec. 296 (New York State Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his color.

## AND AS FOR A FIFTEENTH CAUSE OF ACTION

77.     Plaintiff repeats and realleges paragraphs 1 through 76 of this Complaint as if each paragraph is repeated verbatim herein.

78.     In violation of the New York State Executive Law, Sec. 296 (New York State Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his national origin.

## AND AS FOR A SIXTEENTH CAUSE OF ACTION

79.     Plaintiff repeats and realleges paragraphs 1 through 78 of this Complaint as if each paragraph is repeated verbatim herein.

80.     In violation of the New York State Executive Law, Sec. 296 (New York State Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on the basis of his race.

## AND AS FOR A SEVENTEENTH CAUSE OF ACTION

81.     Plaintiff repeats and realleges paragraphs 1 through 80 of this Complaint as if each paragraph is repeated verbatim herein.

82.     In violation of the New York State Executive Law, Sec. 296 (New York State Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on the basis of his color.

## AND AS FOR AN EIGHTEENTH CAUSE OF ACTION

83.     Plaintiff repeats and realleges paragraphs 1 through 82 of this Complaint as if each paragraph is repeated verbatim herein.

84.     In violation of the New York State Executive Law, Sec. 296 (New York State Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on the basis of his national origin.

## AND AS FOR A NINETEENTH CAUSE OF ACTION

85.     Plaintiff repeats and realleges paragraphs 1 through 84 of this Complaint as if each paragraph is repeated verbatim herein.

86.     In violation of the New York State Executive Law, Sec. 296 (New York State Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres retaliated against Plaintiff for complaining about race, color, and/or national origin discrimination.

## AND AS FOR A TWENTIETH CAUSE OF ACTION

87.     Plaintiff repeats and realleges paragraphs 1 through 86 of this Complaint as if each paragraph is repeated verbatim herein.

88.     In violation of the New York City Administrative Code, Sec. 8 (New York City

Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his race.

## AND AS FOR A TWENTY-FIRST CAUSE OF ACTION

89.     Plaintiff repeats and realleges paragraphs 1 through 88 of this Complaint as if each paragraph is repeated verbatim herein.

90.     In violation of the New York City Administrative Code, Sec. 8 (New York City Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his color.

## AND AS FOR A TWENTY-SECOND CAUSE OF ACTION

91.     Plaintiff repeats and realleges paragraphs 1 through 90 of this Complaint as if each paragraph is repeated verbatim herein.

92.     In violation of the New York City Administrative Code, Sec. 8 (New York City Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to materially adverse and adverse employment actions on the basis of his national origin.

## AND AS FOR A TWENTY-THIRD CAUSE OF ACTION

93.     Plaintiff repeats and realleges paragraphs 1 through 92 of this Complaint as if each paragraph is repeated verbatim herein.

94.     In violation of the New York City Administrative Code, Sec. 8 (New York City

Human Rights Law), Defendants City of New York, New York City Department of Education,

Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on

the basis of his race.

### AND AS FOR A TWENTY-FOURTH CAUSE OF ACTION

95.     Plaintiff repeats and realleges paragraphs 1 through 94 of this Complaint as if

each paragraph is repeated verbatim herein.

96.     In violation of the New York City Administrative Code, Sec. 8 (New York City

Human Rights Law), Defendants City of New York, New York City Department of Education,

Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on

the basis of his color.

### AND AS FOR A TWENTY-FIFTH CAUSE OF ACTION

97.     Plaintiff repeats and realleges paragraphs 1 through 96 of this Complaint as if

each paragraph is repeated verbatim herein.

98.     In violation of the New York City Administrative Code, Sec. 8 (New York City

Human Rights Law), Defendants City of New York, New York City Department of Education,

Daysi Garcia, and Martha Rodriguez-Torres subjected Plaintiff to a hostile work environment on

the basis of his national origin.

## AND AS FOR A TWENTY-SIXTH CAUSE OF ACTION

99.     Plaintiff repeats and realleges paragraphs 1 through 98 of this Complaint as if each paragraph is repeated verbatim herein.

100.     In violation of the New York City Administrative Code, Sec. 8 (New York City Human Rights Law), Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres retaliated against Plaintiff for complaining about race, color, and/or national origin discrimination.

**WHEREFORE,** Plaintiff prays for judgment:

Under Title VII of the Civil Rights Act of 1964, as amended, for each of the First through Seventh Causes of Action, against the City of New York and the New York City Department of Education, jointly and severally:

    i.      declaring the acts and conduct complained of herein in violation of the Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.;

    ii.     enjoining and permanently restraining these violations and directing Defendants City of New York and the New York City Department of Education to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

    iii.    enjoining Defendants City of New York and the New York City Department of Education and their directors, officers, and managers from

26

committing or allowing any further discriminatory harassment, adverse

actions, or retaliation against Plaintiff;

iv.    ordering Defendants City of New York and the New York City

Department of Education, jointly and severally, to pay Plaintiff general

and compensatory damages in an amount to be determined at trial for pain

and suffering, humiliation, emotional distress, mental anguish, and

physical distress suffered by Plaintiff;

v.    ordering Defendants City of New York and the New York City

Department of Education, jointly and severally, to pay Plaintiff specific

damages for the wages and benefits that he has lost as a result of

Defendants' actions;

vi.    ordering Defendants to reinstate Plaintiff as a tenured public school

teacher;

vii.    ordering Defendants City of New York and the New York City

Department of Education, jointly and severally, to pay Plaintiff specific

damages for the treatment costs that he has incurred for the physical,

emotional, and mental injuries he has suffered as a result of Defendants'

actions;

viii.    awarding Plaintiff attorneys' fees and the reasonable costs and

disbursements of this action; and

ix.    granting any other and further relief to the Plaintiff as the Court deems

necessary, just, and proper.

C:      Under 42 U.S.C. Sec. 1981 and the Fourteenth Amendment to the U.S. Constitution, for each of the Eighth through Twelfth Causes of Action, against Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres:

i.      declaring the acts and conduct complained of herein in violation of 42 U.S.C. Section 1981 and the Fourteenth Amendment to the U.S. Constitution;

ii.     enjoining and permanently restraining these violations and directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.    enjoining Defendants City of New York, the New York City  Department of Education, their directors, officers, and managers, Defendant Daysi Garcia, and Defendant Martha Rodriguez-Torres from committing or allowing any further discriminatory harassment, adverse actions, or retaliation against Plaintiff;

iv.     ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

28

v.      ordering Defendants Daysi Garcia and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff punitive damages;

vi.     ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff specific damages for the wages and benefits that he has lost as a result of Defendants' actions;

vii.    ordering Defendants to reinstate Plaintiff as a tenured public school teacher;

viii.   ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff specific damages for the treatment costs that he has incurred for the physical, emotional, and mental injuries he has suffered as a result of Defendants' actions;

ix.     awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action; and

x.      granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.


B:      Under the New York State Executive Law Sec. 296 (New York State Human

Rights Law), for each of the Thirteenth through Nineteenth Causes of Action, against Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres:

    i.    declaring the acts and conduct complained of herein in violation of the New York State Executive Law Sec. 296 (New York State Human Rights Law);

    ii.    enjoining and permanently restraining these violations and directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

    iii.    enjoining Defendants City of New York, the New York City Department of Education, their directors, officers, and managers, Defendant Daysi Garcia, and Defendant Martha Rodriguez-Torres from committing or allowing any further discriminatory harassment, adverse actions, or retaliation against Plaintiff;

    iv.    ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

    v.    ordering Defendants Daysi Garcia and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff punitive damages;

vi.    ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff specific damages for the wages and benefits that he has lost as a result of Defendants' actions;

vii.    ordering Defendants to reinstate Plaintiff as a tenured public school teacher;

viii.    ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff specific damages for the treatment costs that he has incurred for the physical, emotional, and mental injuries he has suffered as a result of Defendants' actions;

ix.    awarding Plaintiff the reasonable costs and disbursements of this action; and

x.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

C:    Under the New York City Administrative Code, Sec. 8, et seq. (New York City Human Rights Law), for each of the Twentieth through Twenty-Sixth Causes of Action, against Defendants City of New York, New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres:

i.    declaring the acts and conduct complained of herein in violation of the New York City Administrative Code, Sec. 8, et seq. (New York City Human Rights Law);

ii.    enjoining and permanently restraining these violations and directing

31

Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.    enjoining Defendants City of New York, the New York City Department of Education, their directors, officers, and managers, Defendant Daysi Garcia, and Defendant Martha Rodriguez-Torres from committing or allowing any further discriminatory harassment, adverse actions, or retaliation against Plaintiff;

iv.    ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

v.    ordering Defendants Daysi Garcia and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff punitive damages;

vi.    ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and severally, to pay Plaintiff specific damages for the wages that he has lost as a result of Defendants' actions;

vii.    ordering Defendants to reinstate Plaintiff as a tenured public school teacher;

viii.    ordering Defendants City of New York, the New York City Department of Education, Daysi Garcia, and Martha Rodriguez-Torres, jointly and

32

severally, to pay Plaintiff specific damages for the treatment costs that he

has incurred for the physical, emotional, and mental injuries he has

suffered as a result of Defendants' actions;

ix.     awarding Plaintiff attorneys' fees and the reasonable costs and

        disbursements of this action; and

x.      granting any other and further relief to the Plaintiff as the Court deems

        necessary, just, and proper.


Dated: Brooklyn, New York
       October 9, 2009


                                    OFODILE & ASSOCIATES, P.C.
                                    Attorneys for Plaintiff Casey Phillip


                          By:     __/s/ /b/ Anthony C. Ofodile___
                                  Anthony C. Ofodile, Esq. (AO-8295)
                                  498 Atlantic Avenue
                                  Brooklyn, NY 11217
                                  Tel. No.:  718-852-8300